(Franklin County Court of Common Pleas.)

THE STATE OF OHIO *v.* VONNIE WESTON AND KATE McMAHON.

1. *Rules of evidence as substantive law.*—Rules of evidence are part of the substantive law of the state.
2. *Power of legislature over rules of evidence.*—All of the legislative power of the state, subject to the restrictions embodied in the constitution, being vested in the legislature, it may make, modify or repeal the rules of evidence as part of the substantive law.
3. *Same.—Making the proof of certain facts a presumption of other facts.*—It is competent for the legislature to enact that a relevant fact or circumstance shall constitute a *prima facie* presumption of law or of fact, and to make that sufficient proof of the main fact to be proved, and to which it is relevant, in the absence of countervailing evidence, because that is only making a rule of evidence.
4. *"Winn Law" not unconstitutional.*—The statute known, in popular speech, as the Winn law (90 Ohio Laws, 300), is, therefore, not unconstitutional.

(Decided March, 1895.)

PUGH, J.

This action was brought under the sanction of the statute known as the Winn law, enacted May 18, 1894, (91 Ohio Laws, 300).

By the first section, a building, or place, which is generally reputed in the neighborhood where the building is located, to be a building or place where persons of opposite sex congregate for prostitution, is declared to be a house of ill-fame.

The second section makes it unlawful to sell or give away spirituous, malt, vinous or other intoxicating liquor in any part of such building or place, or in any shed or addition thereto, or in any other building or structure standing upon the lot upon which the house of ill-fame is situated, or upon premises adjacent thereto, and which is in the control of the person or persons having the control of such house of ill fame.

Under the third section any person who makes such a sale, or gift, of liquor, is made liable to a penalty of $350.00 for said sale or gift, to be recovered in a civil action in the court of common pleas.

Every judgment against such a seller, or donor of liquor, is charged as a lien upon the house of ill-fame and the lot upon which such house is situated.

The fourth section authorizes the seller, or donor of the liquor, and the owner of the building and lot, to be made parties defendant to every such action, and the state of Ohio to be the plaintiff.

By the fifth section each unlawful act of selling, or giving away liquor, is made a separate cause of action.

And a sale or gift of the liquor, by the servant or employe of the proprietor, or proprietress, of the house, made with the latter's knowledge, is constituted a cause of action against him or her, as well as against the servant or employe making the sale or gift.

In virtue of the seventh section, *any person* may institute and prosecute the action in the name of the state.

The enactment of the seventh section is, that, upon the trial of the action " *it shall not be necessary to prove any overt act of prostitution in the building or place alleged to be a house of ill fame, but that it shall be sufficient to show that it is generally reputed in its neighborhood to be a place where persons of the opposite sex meet for purposes of prostitution.*"

This action is brought against Vonnie Weston, the alleged seller or donor of the liquor, and Kate McMahon, the owner of the building in which the former is charged to have sold or given away intoxicating liquor in violation of the statute.

Vonnie Weston, but not Kate McMahon, demurred to the petition. Her contention is that the statute is unconstitutional. The specific provisions of the constitution to which it is supposed to be repugnant, are those which ordain that no conviction shall work the forfeiture of an estate, and that no person shall be compelled to be a witness against himself in a criminal case.

Again, it is urged that one of the provisions of section 10 of the bill of rights is fractured by this statute. In his brief one of the counsel for the demurrant says it was that provision which declares, "that no person shall be found guilty of crime, or adjudged to suffer the penalties of violated public law, except by the verdict of an impartial jury." It is an unfortunate quotation, because it cannot be found in the place designated. That section does guarantee to every accused person in criminal cases a "speedy public trial by an impartial jury."

It is difficult to treat, with solemnity, the arguments advanced in support of these contentions. Omitting for the present the seventh section, the rest of the statute is not susceptible of the construction which counsel endeavored to fix upon it. This is a civil action; it cannot be assimilated

to a criminal action.   The act itself designates it as a civil action.   There is absolutely no reason for asserting that any judgment which may be rendered in it against the defendants, Weston and McMahon, or either of them, can bring about a forfeiture of their estate.   It is argued that the statute compelled the defendant to be a witness against herself, because, if she did not answer the petition, it would be taken as confessed..   The mere statement of this point is enough to demonstrate its illogicality.   Time would be wasted if I should dwell any longer on it.

Some other novel arguments were advanced against the law.   It was urged that it might subserve the purpose of private malice.   Grant that it may be abused; that does not make it unconstitutional.   Courts cannot nullify laws, because they are unwise.   It was said the statute does not include beer as an intoxicating liquor.   That is a misconstruction of the statute.  Besides, the petition alleges that the beer sold was intoxicating liquor. Whether that is true or false, is a question of fact for the jury, and not for the court to decide on demurrer.

The argument that the petition should affirm that the defendant, Weston, knew that the beer was intoxicating liquor, does not deserve an extended notice.   It is not now, never was, and never will be the law.   The statute does not make the knowledge of the seller, or donor, of the liquor, an essential element of the cause of action.   Even if it was a criminal case, and not a civil case, the indictment would not have to aver that the liquor was sold, or given away, *with knowledge that it was intoxicating liquor*, the supreme court having decided in *Picket* v. *The State*, 22 Ohio St. 405, that it is sufficient to allege that it was done unlawfully.

Then it was argued that the law cannot be enforced against the owner of the property, unless she knew that intoxicating liquor was sold in the house, but that the petition does not aver the *scienter* of the owner.   It is enough to say that, as the attorneys do not represent the owner, and as she had not interposed a demurrer, this contention cannot be heeded.   The validity of a lien, such as this statute in certain circumstances impresses upon the property which has been used to subserve illegal purposes, has been sustained by the Supreme Court in *Binder* v. *Finkbone*, 25 Ohio St. 103.

It is competent for the legislature to pass such a law, "in the exercise of its general police powers," said Judge McILVAINE.   The police power of a state has been defined as "authority to establish for the intercourse of the social members of the body-politic, with each other, those rules of good conduct and good neighborhood, which are calculated to prevent a conflict of rights, and to insure to each the uninterrupted enjoyment of his own, so far as is reasonably consistent with a corresponding enjoyment by others." Cooley's Const. 227.   " It extends to the protection of the lives, limbs, health, comfort and quiet of all persons, and the protection of all property within the state,  *  *  * and persons and property are subject to all kinds of restraints and burdens in order to secure the general comfort, health and prosperity of the state."   *Thorpe* v. *Rutland, etc., R. Co.*, 27 Vt. 149.

But whether the statute is unconstitutional, because it does not make the knowledge of the owner of the property, that the intoxicating liquor was sold in the house, an essential element of the cause of action against him, I decline to decide, for the reason that the owner has not demurred. Besides, practically the same question will probably be decided in a few weeks by the Supreme Court.   We can afford to wait till that court "blazes the way."

A serious question does arise upon the seventh section of this statute, which defines the *quantum* of evidence necessary to establish the fact that the building or place is a house of ill fame.   Does *it* collide with the con-

stitutional guarantee of due process of law and trial by jury ? Rules of evidence are, at all times, subject to the modification and control of the legislature. *Howard* v. *Moot*, 64 N. Y. 262.

This is a postulate with which, in the consideration of the question, we must start, because all of the legislative power of the state, except so far as it is expressly otherwise provided by the state constitution, is vested in the legislature. (Section 1 of article 11, of the constitution).

The power to prescribe the rules of evidence includes, as does the greater the less, the power to enact that a relevant circumstance shall be presumptive evidence of an alleged fact. Some of the rules of evidence consist of presumptions of law and presumptions of fact. Many of them have been adopted from motives of public policy, and for the promotion of the public good. The doctrines of presumptive evidence are as much under the control of the legislature as are the other rules of evidence.

Wharton has made it manifest that all presumptions of law are rules of substantive law, expressed in terms of the law of evidence.

The legislative power to modify and repeal, within constitutional limits, substantive law, is not affected by the fact that the modification or repeal assumes the form of a rule of evidence. The competency of legislation establishing disputable presumptions of law, or of fact, as rules of evidence for the trial of both civil and criminal cases, cannot be successfully challenged. Moreover, there is a number of most respectable authorities which sustain the theory that a law which makes a conclusive presumption of law such a rule of evidence, for the trial of civil cases, is constitutional.

The exertion of this legislative power does not abridge the right of trial by jury. On the contrary, it supports and maintains it. If the fact, or circumstance, which is made the basis of the presumption, is, according to common law rules of evidence, relevant in establishing the main fact; and, if the law does not create a conclusive presumption on which the court might give a binding instruction to the jury ; or, in other words, if it only creates a presumption of fact, or a *prima facie* presumption of law, the constitutional competency of this statute is obvious. It declares that the fact that the house bears the general reputation of being a trysting place for participants in prostitution, shall be sufficient to prove the fact that it is a house of ill fame.

The connection between the two facts is not an arbitrary one. It is possible ; yes, it is probable, that the two facts may not co-exist; there may be the fact of reputation, and yet not the other fact. But that may happen in any case, where presumptions are rules of evidence. Rules of evidence, consisting of presumptions, might all be destroyed by such reasoning.

The two facts, the fact of reputation, and the fact that the building is a house of ill-fame, are not necessarily inseparable. The conclusion that the house is actually one of ill-fame, deduced from the fact that it is reputed to be such, is not such an inference that it would be unreasonable in the opinion of sensible and unprejudiced persons. *People* v. *Cannon*, 34 N. E. 759.

These considerations, the naturalness, the reasonableness of the connection between the two facts, the probability that if one exists the other also exists, invest the fact of reputation with the necessary common law attribute of relevancy.

At common law a witness may be impeached by reputation ; certain public rights may be established, or destroyed, by reputation ; questions of pedigree are settled by evidence of reputation. Reputation evidence is not, therefore, unknown to the common law.

The only perplexing question is whether the seventh section requires

that a conclusive legal presumption, or a presumption of fact, or a *prima facie* legal presumption, that the house is one of ill-fame, shall, or may, be drawn from its reputation as such when proved. It is plain that it does not require the court to take the question, whether the house is one of ill-fame, away from the jury, when the evidence tending to prove it has such a reputation, is unrebutted.

All the court can do is, to instruct the jury that, if the plaintiff has shown that the building is generally reputed to be a house where persons meet for purposes of prostitution, they may, in the absence of counter-vailing evidence, infer that it is a house of ill-fame, and further, that the law does not demand proof of overt acts of prostitution from the plaintiff.

The legitimate and logical effect of this provision is that the trial judge must leave the question as to whether the building is a house of ill-fame, to the jury, when the fact of its general reputation as such is all that is given in evidence on that issue, whereas, in the absence of that statute, he might have ordered a verdict for the defendant, for lack of evidence; and as a corollary of this, the trial judge is restrained from vacating a verdict on this issue, when the fact of reputation is the only evidence on the issue. That is probably enough to authorize the conclusion that the statute does not create a conclusive presumptive of law.

It is equally certain that the statute does not forbid the defendant to prove that the building does not bear the reputation of being a house where persons meet for prostitution. Nor does it put any restriction on the jury in passing on the facts.

Conclusive legal presumptions are distinguishable from *prima facie* legal presumptions, and argumentative conclusions of fact are not presumptions of law at all. But presumptions of law and fact are not distinguishable by the fact that they may be controverted by evidence, for one class of the former may, as well as the latter, be rebutted by evidence.

While I do not construe this section of the statute to mean that the jury may, or may not, make a mere argumentative deduction that the building is a house of ill-fame, from the fact of its general reputation as such, still, I am satisfied that the presumption to be deducted from the latter fact is a rebuttable one. It is competent for the defendant, not only to disprove the evidence as to reputation, but also to prove that, in fact, the building is not a house of ill fame. The statute not having ordained, in express terms, or by clear implication, that the defendant shall not offer such evidence, I do not think a court should construe it to mean that.

With the policy, the wisdom and justice of this statute, the judiciary is not concerned, and cannot deal. And yet it could be vindicated on all of these grounds.

The tendency of some courts to apply exclusory rules of evidence—rules of evidence which result in the protection of the accused in criminal cases, and especially in prosecutions for carrying on illegal but profitable business, has been marked.

Frequently have defendants in such cases been saved from a just conviction and condign punishment by a ruling of lower courts, and higher courts, that the evidence, which was sufficient on general principles, was not enough to authorize a conviction. This tendency has inspired and caused the enactment of such rules as this one now under consideration, even for the trial of criminal cases. Their purpose was to put an end to the inefficaciousness of the administration of the criminal law, and to brace up the courts to the level of the common law principles of evidence.

"It is certain," said Phillips, "the administration of justice in our courts has suffered, not from too free admission of evidence, but from too

rigid exclusion." It is a proposition which our Supreme Court has approved. (44 Ohio St. 700.)

If such statutes are wise and just for the trial of criminal cases, there is much less reason for objections to them for the trial of civil cases.

Demurrer overruled.

*Clark & Mosier*, for plaintiff.

*Case & Brister*, for defendants.